# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAMMY PERRY,** | : | **CIVIL ACTION** |
| Plaintiff | : | |
| | : | |
| vs. | : | **NO. 09-5645** |
| | : | |
| **REDNER'S MARKETS, INC.,** | : | |
| Defendant | : | |

## M E M O R A N D U M

**STENGEL, J.**                                                                                       September 30, 2013

Sammy Perry brings this suit against Redner's Market, his former employer, alleging employment discrimination,[1] false arrest, and malicious prosecution. Redner's Market moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, I will grant the motion in its entirety.

## I. BACKGROUND

Mr. Sammy Perry is an African American who was employed by Redner's Market at its Lansdale location working the third shift as a grocery clerk beginning on July 10, 2003. Mr. Perry alleges that, because of racial discrimination, his hours were reduced beginning in June 2004 which led him to make less money than his white counterparts. He complained to his supervisors, his managers, and to the defendant's corporate office

---

[1] Mr. Perry brings his employment discrimination claims under Title VII of the Civil Rights Act of 1964 and under the Pennsylvania Human Relations Act. While Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, its courts nevertheless generally interpret the PHRA in accord with its federal counterparts. Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083-84 (3d Cir. 1995). Accordingly, I shall specifically address only the Title VII claims which analysis applies equally to the PHRA claim. Kelly v. Drexel University, 94 F.3d 102, 105 (3d Cir. 1996).

about the discrimination. His hours continued to be reduced and in November 2004, Mr. Perry filed a complaint with the Pennsylvania Human Relations Commission which investigated his claim.

Mr. Perry was injured at work on December 27, 2004, and began receiving full workers' compensation benefits until his return to the workplace on August 27, 2006, a leave of approximately twenty months. Upon his return, Redner's provided Mr. Perry with light duty employment.

On September 14, 2006, Detective Ward Thomas of the Montgomery Township Police Department contacted Defendant Redner's Market Security Division, informing it that a woman reported losing her credit card at the Lansdale store about a week earlier, and that three unauthorized charges were made the following morning from Register #9 at the Lansdale location. Mr. Cory Deily of Redner's Security Division emailed pictures from its videotape surveillance cameras to the store managers, and requested that they identify the individual at Register #9 at the time the crime occurred. Assistant Manager Brian Golden of the Lansdale store notified Mr. Deily that it was Mr. Perry depicted in the pictures. Mr. Deily, in turn, passed this identification on to Detective Thomas who prepared the police criminal complaint and affidavit of probable cause charging Mr. Perry with various criminal offenses.

On September 22, 2006, while handcuffing Mr. Perry, Detective Thomas arrested him at the store in front of his co-workers, brought him to the police station, and charged him with three counts each of Identity Theft; Theft of Property; Theft By Deception; Receiving Stolen Property; and Possession of Instruments of Crime.

About the same time, the defendant's security division had been investigating Liana Elam, another Redner's employee, as having been involved in a theft of $50. When Miss Elam was asked about the stolen credit card, she admitted to having found it and used it with her roommate on three occasions. Miss Elam was terminated and arrested. She subsequently entered guilty pleas for the unauthorized uses of the card. She told the police that Mr. Perry was not involved with the theft in any way. The police withdrew the charges against Mr. Perry and released him for lack of evidence.

Mr. Perry was still scheduled to work at Redner's on September 25, 2006, but he failed to report to work for his scheduled shift although he had been released by the police. Mr. Perry never contacted Redner's regarding his continued employment.

## II. STANDARD OF REVIEW

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(a). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be

3

met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials.  FED.R.CIV.P. 56(c)(1)(A).  That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. at 322.  Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.  The court must decide not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  Id. at 252.  If the non-moving party has exceeded the mere scintilla of evidence threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent.  Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.  DISCUSSION

    **B.  Untimeliness of Counts Three and Four**

Initially, I note that Mr. Perry's claims of false arrest and malicious prosecution are untimely.  These claims were subject to Pennsylvania's two-year statute of limitations

for personal injury actions.  See Kost v. Kozakiewicz, 1 F.3d 176, 189-190 (3d Cir. 1993); Napier v. Thirty or More Unidentified Fed. Agents, Employees or Officers, 855 F.2d 1080, 1087 n.3 (3d Cir. 1988); see also 42 Pa. C.S. § 5524.  These causes of action accrued when Mr. Perry knew or should have known of the injury upon which his complaint is based.  See Sameric Corp. of Delaware v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); Rose v. Bartle, 871 F.2d 331, 350 (3d Cir. 1989) (The two-year limitation begins to run from the time the plaintiff suffers, or has reason to know of, the injury).  Thus, Mr. Perry was required to bring suit for false arrest and/or malicious prosecution within two years of his arrest on September 22, 2006.  However, Mr. Perry filed the action in this court on November 25, 2009, over three years after the alleged false arrest and/or malicious prosecution.[2]  These claims are thus untimely.

I also note that Mr. Perry did not address any of the defendant's arguments against these two claims in his response to the motion for summary judgment.  As such, the arguments remain uncontested, and Mr. Perry has waived any opportunity to present any challenge to Redner's claim of untimeliness.  Accordingly, I will grant summary judgment in favor of Redner's Market in Counts Three and Four.

In the alternative, however, even if these state law tort claims were timely, they would still fail.  In my Memorandum denying the defendant's motion to dismiss, I

---

[2] That Mr. Perry filed a Writ of Summons against Redner's in the Montgomery County Court of Common Pleas on September 17, 2008, is of no import here.  That case was dismissed for inactivity pursuant to Rule 230.2 of the Pennsylvania Rules of Civil Procedure.  Furthermore, that case was never removed to federal court.  A state court action does not act to toll a state law statute for the purposes of a subsequent federal lawsuit.  Ravitch v. Price Waterhouse, 793 A.2d 939, 942-943 (Pa. Super. Feb. 25, 2002) (citing Falsetti v. Local Union No. 2026, United Mine Workers of America, 355 F.2d 658 (3d Cir. 1966).

5

accepted the allegations in the complaint as true, drew all inferences in Mr. Perry's favor, and found that Mr. Perry should be entitled to discover and offer evidence to support his claims.  I further determined that upon the completion of discovery, a more comprehensive analysis of these claims would be possible.  Although discovery is completed, Mr. Perry has come forth with no evidence to support his claims for false arrest and/or malicious prosecution.  In fact, he has chosen not to challenge the defendant's arguments regarding these two claims.

Nevertheless, discovery in this case has resulted in the following facts regarding the arrest which are important to review here.  The Montgomery Township Police Department notified Redner's that there were three unauthorized uses of a credit card at its Lansdale store.  Cory Deily, Redner's Loss Prevention Officer, learned from the police that one of the transactions occurred at Register #9 at 8:30 a.m.  At the request of the police, Mr. Deily obtained a videotape of the transaction at Register #9, and provided it to the police.  When the police requested the identity of the employees seen on the video, Redner's accurately identified Mr. Perry, along with Liana Elam, as the individuals at Register #9 at 8:30 a.m.  The police arrested Mr. Perry on September 22, 2006.  That same date, Miss Elam confessed to Mr. Deily that she stole the credit card, and ultimately implicated her non-employee roommate as an accomplice.  Miss Elam has sworn an affidavit indicating that, although Mr. Perry was not involved, she may have "accidentally" swiped the stolen credit card while he was making his purchase at Register #9.  Mr. Deily then communicated Miss Elam's confession and her exoneration of Mr. Perry to the police.  The police determined that Mr. Perry only appeared on one of the

6

three videos depicting the use of the stolen credit card. The police file includes the following narrative which refers to Mr. Deily's exculpatory communication concerning Mr. Perry:

> "I later received a call from Deily advising that after speaking to Elam, it appears that Perry is not the person on the second and third transaction as he first identified. Perry is on the first transaction but Elam is stating she does not remember if she used the card. . . . It is still not clear if Perry was aware of the usage, had knowledge of the use, or benefitted from the transaction in any way."

Based in part on Mr. Deily's communication of Miss Elam's confession, his communication of her denial of Mr. Perry's involvement, as well as his confirmation that Miss Elam's roommate, and not Mr. Perry, appeared on the videotapes of subsequent criminal uses of the stolen credit card, the police withdrew all charges against Mr. Perry, and released him for lack of evidence, although it seems that the police were not convinced of Mr. Perry's innocence. With these facts as background, I will review the two state law tort claims in turn.

1. False Arrest

An arrest is the taking of another person into custody under an assertion of legal authority to do so and for the purpose of bringing that person before a court or otherwise securing the administration of law. See Restatement (Second) of Torts, § 112. False arrest or false imprisonment occurs under Pennsylvania law[3] where a person has been (1)

---

[3] The Subcommittee Note associated with Pennsylvania's Suggested Standard Civil Jury Instruction § 13.04 explains that where an arrest is illegal or false, "a cause of action for false imprisonment arises. The 'false arrest' constitutes nothing more than the essential elements, i.e., the confinement and the illegality of the confinement, of the action for false imprisonment."

arrested or restrained (2) without adequate legal justification. McGriff v. Vidovich, 699 A.2d 797, 799 n.3 (Pa. Commw. 1997) (false arrest is an arrest made without probable cause or an arrest made by a person without privilege to do so). An action for false arrest requires that the process used for the arrest be void on its face or that the issuing tribunal be without jurisdiction. La Frankie v. Miklich, 618 A.2d 1145, 1148 n.2 (Pa. Commw. 1992) (quoting Lynch v. Johnston, 463 A.2d 87 (Pa. Commw. 1983)). It is insufficient that the charges were unjustified. Id. Nevertheless, a private individual can be held liable for false arrest and/or false imprisonment, where he knowingly provides false information to authorities and where the arrest and/or imprisonment results from this information. Gilbert v. Feld, 788 F. Supp. 854, 862 (E.D. Pa. 1992).

Here, it is undisputed that Mr. Perry was arrested as a suspect in the theft and illegal use of a credit card. It is also undisputed that Detective Thomas was a police officer authorized to make that arrest. Detective Thomas prepared a police criminal complaint and affidavit of probable cause with the information provided by the managers of the defendant who observed whom they determined was Mr. Perry in the vicinity of a cash register where and when the criminal act occurred. They provided the police with an identification of Mr. Perry as the individual seen with Liana Elam who ultimately pleaded guilty to the crime committed at Register #9. Mr. Perry admitted in his deposition that he is seen with Miss Elam on the video. Further, Miss Elam swore that

---

False arrest requires an arrest made without probable cause, while false imprisonment requires an unlawful detention of another person. Brockington v. City of Philadelphia, 354 F.Supp.2d 563, 572, n.10 (E.D. Pa. 2005). However, "false arrest and false imprisonment are nearly identical claims and are generally analyzed together." Id. at 571, n. 8.

she "may have accidentally swiped" the stolen credit card while Mr. Perry was making a purchase. Although the managers' identification of Mr. Perry as a suspect may have been a mistake, it was a reasonable one under the circumstances. Not only was the information Redner's provided to the police not "knowingly false," it was actually accurate. Thus, if this claim were timely filed, the defendant could not have been held liable for deliberately providing false information to the police, or for the state law tort of false arrest.

### 2. Malicious Prosecution

Mr. Perry also claims that Redner's caused him "to be criminally charged and prosecuted" "by reporting to the police information that [he] was involved in the illegal transactions with the stolen credit card." See Compl. ¶ 56. The law in Pennsylvania on malicious prosecution is based on the Restatement (Second) of Torts. Section 653 of the Restatement provides:

> A private person who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged is subject to liability for malicious prosecution if (a) he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an offender to justice, and (b) the proceedings have terminated in favor of the accused.

In order to have prevailed on this claim, Mr. Perry would have had to show that Redner's initiated or procured the institution of criminal proceedings against him: (1) without probable cause; (2) with malice; and (3) the proceedings must have terminated in favor of the plaintiff. Griffiths v. Cigna Corp., 988 F.2d 457, 463 (3d Cir. 1993) (citing Kelley v. General Teamsters, Chauffeurs, and Helpers, Local 249, 544 A.2d 940, 941

9

(Pa. 1988)). Probable cause in the context of the tort of malicious prosecution does not require proof beyond a reasonable doubt, but rather, is defined as a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that a party is guilty of the offense. Cosmas v. Bloomingdales Bros, Inc., et al., 660 A.2d 83, 86 (Pa. Super. 1995). A showing of probable cause to institute proceedings against a plaintiff establishes an absolute defense against an action for malicious prosecution, which renders immaterial the issue of whether the defendant's motive is malicious or otherwise. Bruch v. Clark, 507 A.2d 854, 857 (Pa. Super. 1986). Malice has been stated to include ill will in the sense of spite, the use of a prosecution for an extraneous, improper purpose, or the reckless and oppressive disregard of the plaintiff's rights. Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988). Malice may be inferred from the absence of probable cause. Kelley v. General Teamsters, 544 A.2d at 941. However, before a court determines whether the plaintiff has demonstrated the absence of probable cause and the presence of malice, it is appropriate for it to address the more fundamental question of whether the defendant either directly instituted the proceedings against the plaintiff or can be charged with the responsibility for the institution of the proceedings. Griffiths, 988 F.2d at 464.

      Pennsylvania courts have considered a defendant's responsibility for the "initiation of proceedings" element of malicious prosecution by referring to Comment "g" of Section 653 of the Restatement (Second) of Torts which provides, in pertinent part:

> **Influencing a public prosecutor**. . . . When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in this Section ***even though the information proves to be false and his belief was one that a reasonable man would not entertain.*** The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.
>
> If, however, the information is ***known by the giver to be false***, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information. ***In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false***. (Emphasis added).

Here, the evidence of record unequivocally shows that Redner's cannot be liable for malicious prosecution because it did not initiate the criminal proceedings against Mr. Perry. Instead, it responded to a valid inquiry by law enforcement and provided information to the Police Department in order to assist it with its investigation of the theft and the unauthorized use of a credit card. The defendant identified Mr. Perry as the person in the surveillance video, but the initiation of the investigation and charges began with the police.

Further, given the facts of this case, the police certainly had probable cause in arresting Mr. Perry. Supported by the surveillance video showing Mr. Perry at Register

#9 with Miss Elam at the time of the unauthorized use of the credit card, the police had a reasonable ground of suspicion sufficient to warrant an ordinary prudent man in the same situation in believing that Mr. Perry was guilty of the offense.  See Cosmas, 660 A.2d at 86.  And, that showing of probable cause establishes for Redner's an absolute defense against this action for malicious prosecution.  See Bruch, 507 A.2d at 857.  Thus, whether Redner's motive was malicious is immaterial.  Id.

Nevertheless, Mr. Perry's allegation that the defendant intentionally misidentified him to the police deliberately in retaliation for his complaints to the Pennsylvania Human Relations Commission remains unsupported.  Mr. Perry has failed to show the presence of malice on the defendant's part in identifying him on the video.  Further, he has not proven that the agents of the defendant deliberately lied to the police in retaliation for Mr. Perry's complaints of employment discrimination based on race.  What has been proven is that the defendant provided to the police the identity of a person in a set of photographs.  Its managers observed whom they determined was Mr. Perry in the vicinity of a cash register where and when a criminal act occurred, and reported Mr. Perry as a suspect to the police.  Mr. Perry admitted in his deposition that he is seen with Miss Elam on the videotape.

Accordingly, if the claims for false arrest and/or malicious prosecution were timely, I would still grant the defendant's motion for summary judgment in Counts Three and Four.

## B. Counts One and Two[4] -- Retaliation

Mr. Perry made complaints of racial discrimination against Redner's due to its scheduling of work hours. He claims that, as a result of those complaints, Redner's retaliated against him by improperly identifying him as having committed criminal acts, by arresting him, and by terminating his employment. See Compl. ¶ 38. Title VII prohibits employers from retaliating against employees who oppose discriminatory employment practices or file their own charges of discrimination. 42 U.S.C. § 2000e-3(a). The PHRA also prohibits an employer from discriminating against employees who oppose discrimination or file charges of discrimination. 43 PA. CONS. STAT. § 955(d). The elements of a retaliation claim are the same under both statutes. Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997).

To establish a *prima facie* claim of retaliation under Title VII or the PHRA, a plaintiff must establish three elements: (1) the plaintiff must have engaged in protected activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected conduct; and (3) a causal connection between the employee's protected activity and the employer's adverse action. Id. The McDonnell Douglas burden-shifting formula also applies to retaliation claims. Thus, once a plaintiff establishes a *prima facie* case of discrimination, the defendant must produce a legitimate non-discriminatory reason for the adverse action. In response, the plaintiff must establish that the employer's reason is pretextual. Id.

---

[4] In Count Two of his complaint, Mr. Perry inadvertently included the Philadelphia Police Department as the defendant. This was clearly a typographical error. The defendant in Count Two is Redner's Market.

Mr. Perry has not established a *prima facie* case for retaliation. By complaining of racial discrimination to his employer and to the state agency, Mr. Perry engaged in protected activity sufficient to satisfy the first element. To prove the second element of a *prima facie* case of retaliation, however, a plaintiff must show that the employer's action was materially adverse, which means the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Burlington Northern & Santa Fe Ry. v. White</u>, 548 U.S. 53, 68 (2006). Mr. Perry attempts to satisfy this element by claiming that the defendant improperly identified him as having committed criminal acts, that it arrested him, and that it terminated his employment.

As I have already found, Redner's did not improperly identify Mr. Perry as having committed criminal acts. It also did not arrest him. Redner's complied with a valid request from the police to identify employees on a videotape at Register #9 on a certain date and time at its Lansdale store. Redner's identified Mr. Perry to the police as the gentleman on the video. Mr. Perry conceded that he was seen on the videotape next to Miss Elam at Register #9. Redner's did not initiate any criminal proceedings against Mr. Perry. And, as soon as Redner's was informed by Miss Elam that she and her roommate were the perpetrators, it contacted the police with the information exonerating Mr. Perry.

Next, Redner's did not terminate Mr. Perry's employment. The evidence of record demonstrates that Mr. Perry abandoned his job by not working his scheduled shift on September 25, 2006. In his attempt to argue otherwise, Mr. Perry cannot escape the fact that no one at Redner's ever told him that his employment was terminated. Mr. Perry

conceded as much in his deposition when he admitted that no one associated with Redner's informed him that he was terminated:

> Q: My question is, is there a human being at Redner's who told you, Mr. Perry, your employment is ended or terminated?
>
> A: No.

The record shows that Mr. Perry abandoned his job at Redner's. He attempts to mislead the court to conclude that Mr. Golden, the defendant's Assistant Manager of the Lansdale store, believed otherwise. In Footnote 12 of Mr. Perry's response to the motion, citing pages 245-246 of Mr. Golden's deposition, Mr. Perry indicates that "Brian Golden agreed that Sam Perry did not 'voluntarily' abandon his job." That statement is, at best, incomplete. The cited lines from the deposition portray Mr. Golden's actual testimony:

> Q. Would you agree he didn't voluntarily abandon his job?
>
> A. I agree that he didn't voluntarily abandon his job. He wasn't -- he didn't abandon his job on the 22nd.
>
> Q. Okay.
>
> A. He abandoned his job two days later when he didn't show up for his shift.

Mr. Perry also attempts to show that Redner's would have fired him anyway for having been arrested. That is immaterial here. The question is whether Redner's retaliated against Mr. Perry by firing him, and the record shows and Mr. Perry concedes that Redner's did not fire him. He chose not to return to work there.

Accordingly, the second step in the *prima facie* case for retaliation cannot be met under these circumstances. The adverse actions that Mr. Perry attributes to Redner's do

15

not have any basis in fact. In the alternative, however, even if the actions were materially adverse and could be attributed to Redner's, Mr. Perry's retaliation claims would still fail because he cannot establish the third element, i.e., causation.

While Mr. Perry's allegations of racial discrimination in April and November 2004 are protected activity, they are not linked to any adverse employment action through temporal proximity or a sufficient record of ongoing antagonism. See Woodson, 109 F.3d at 920-921 (Temporal proximity is sufficient to establish the causal link. A plaintiff can also establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period). To the contrary, in his deposition, Mr. Perry admitted that there is no evidence that Redner's harbored any hostility, resentment, or retaliatory animus towards him after he made his race-based discrimination complaints beginning in April 2004. In fact, Mr. Perry testified that Redner's properly investigated his claim and treated him well in every respect. Mr. Perry testified that he raised his racial discrimination claim with Brain Golden, the defendant's Assistant Manager, in April 2004. Mr. Perry then raised his complaint in detail with Mr. Huber, the store Manager. Afterwards, Mr. Perry sent a letter to Robert McDonough, the defendant's Director of Human Resources, informing him of the nature of his complaint, and the substance of his conversations with store management. In response to his letter, Mr. Perry received a telephone call at his home from Mr. McDonough and Mr. Klein, the defendant's Regional Manager. These men discussed with Mr. Perry his complaints of discrimination.

Also in his deposition, Mr. Perry admitted that Redner's management made no threats of adverse treatment against him, and he did not perceive any adverse treatment from Redner's in the aftermath of his complaints. Instead, Mr. Perry testified that Redner's management repeatedly praised him, and that he "felt like [he] had a good relationship" with Redner's management after the racial discrimination complaint. At his deposition, defense counsel asked Mr. Perry if he "received compliments from [his] supervisors" Mr. Perry responded, "That would be correct." Between the time of his complaints of racial discrimination and his abandonment of his job, Mr. Perry received positive evaluations, pay increases, and was not the subject of any disciplinary actions.

Mr. Perry also admitted that the race discrimination he perceived in April 2004 disappeared by 2005. The first incident of retaliation which Mr. Perry alleges as the result of his complaints in 2004 occurred in September 2006 when he was arrested by the Montgomery Township Police Department. There is no evidence of a causal connection between Mr. Perry's complaints of discrimination and any adverse action which could have been attributed to Redner's.

After careful review of the evidence of record in this case, I find that Mr. Perry has failed to present any facts which could connect his arrest to any retaliatory intent on the defendant's part. Nor has he presented any facts which could dispute the fact that he abandoned his employment with Redner's and/or quit when he failed to appear for his scheduled shift on September 25, 2006. Finally, Mr. Perry has not established any pattern of antagonism or retaliatory animus against him in the intervening years between

his initial complaint of racial discrimination in April 2004 and the end of his employment in September 2006. Accordingly, I will also grant summary judgment in favor of the defendant and against the plaintiff in Counts One and Two.

An appropriate Order follows.